## Coulter v. Gas Company.

*Oil and gas lease—Liability of assignee.*

An assignee of an oil or gas lease is liable for payment of all rents or royalties, which accrue when he holds the assignment.

*Oil and gas lease—Failure of gas—Reassignment.*

Where an oil and gas lease provides for the payment of a stipulated sum per year for each well from which gas is used off the premises and there is no apportionment provided for in case of failure of gas, when a new year is entered upon, an obligation to pay for all that year arises subject to any stipulated right to annul by reassignment.

Argued May 8, 1900. Appeal, No. 220, April T., 1900, by defendant, in a suit of A. L. Coutler against Conemaugh Gas Company, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1898, No. 440, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Assumpsit. Before SLAGLE, J.

Material facts sufficiently appear in the opinion of the court.

Plaintiff submitted the following point:

[1. The lease to defendant is a yearly letting of the premises, and under the terms of the lease, if defendant held it and exercised rights under it for the first quarter of the year, they are liable for the full year of both the land rental and the royalty for the well, and this is true whether they exercised rights under the lease for the remainder of the year or not. Answer: Affirmed.] [1]

The court below instructed the jury to find a verdict for plaintiff.

Verdict and judgment for plaintiff for $312.60. Defendant appealed.

Errors assigned were (1) in refusing plaintiff's point, reciting same. (2) In directing the jury to find for the plaintiff.

R. B. Stone, with him O. H. Rosenbaum, for appellant.—The term of the appellant's control over the premises had ceased by the exhaustion of the gas, for the removal of which the license was granted, except, of course, that it had the right to remove its property, that is, the casing, tubing and pipe lines, at any time: Patterson v. Hausback, 8 Pa. Superior Ct. 40.

Can it be contended that the term of liability extended bebeyond the term of the instrument under which the alleged liability arose? Boyer v. Fullmer, 186 Pa. 282.

The same rule was applied in Kemble Iron Company v. Scott, 15 W. N. C. 220, and McCahan v. Horton, 121 Pa. 424.

The sum prescribed by the clause in question was not, and did not purport to be, for the rent of the premises, but as in the case of Williams v. Guffy, 178 Pa. 342, "was for the use of the well," or for the product of the well. The rental for

the farm as in the latter case was not limited to the payment required for this well.

If, pending the adjustment of a disputed liability, the debtor transmit money to his creditor as a payment in full of the demand, the creditor may not receive and retain the money as a credit upon a larger sum claimed by him, without discharging the debtor as to the whole: Gas Co. v. Johnson, 123 Pa. 576.

In that case, the Supreme Court, WILLIAMS, J., said : "The party paying money has the right to direct its appropriation. It was the plain duty of the lessor to accept the check for the purpose for which it was offered, or to return it." See also Harris v. Hay, 111 Pa. 562, Rhoad's Appeal, 189 Pa. 460, and McDonald v. Piper, 193 Pa. 312.

*Harvey A. Miller*, for appellee.—It is contended by counsel for appellee that appellant is liable for the royalty for the well for the remainder of the year, and for reasons therefor see, Williams v. Guffy, 178 Pa. 342.

OPINION BY WILLIAM W. PORTER, J., June 26, 1900 :

This action arises upon a written contract executed May 3, 1893, between A. L. Coulter and John Bott. Bott thereupon assigned the agreement to the Jackson Farm Gas Company. The agreement related to the production of oil and gas on a farm owned by the plaintiff. The portions of the contract essential to a consideration of this case are as follows: The plaintiff granted to John Bott and his assigns " all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water, and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil, gas or water taken from said premises . . . . to have and to hold the above premises on the following conditions : If gas only is found, second party agrees to pay $300 each year, quarterly, for the product of each well while the same is being used off the premises. . . . In case no well is completed within . . . . from this date, then this grant shall become null and void, unless second party shall pay to said first party, $150 annually for each year thereafter such completion is delayed . . . . The second party also re-

serves exclusive right to reconvey the premises hereby granted, and thereupon this instrument shall be null and void. The rental to commence from date of this lease and to be paid every three months, $37.50. . . . The rental to continue on one half of this farm until a second well is drilled."

The Jackson Farm Gas Company completed a gas producing well on March 27, 1895, and continued in occupancy until September 24, 1897, the date of the assignment to the defendant company. The payments required by the agreement were made until March 27, 1897. The next quarterly payment, which fell due on June 27, 1897, was not made until November 8, 1897, by a check of the Jackson Farm Gas Company. This, it will be noted was subsequent to the assignment of the contract to the defendant company. Accompanying the check was a letter in which it is said: " As the well stopped producing prior to June 27, the above amounts are in full settlement for royalties and rental." The evidence, while not entirely clear, indicates that the well was disconnected from the pipe lines about the time of the assignment of the contract to the defendant company, in September, 1897.

The plaintiff's claim is for the last three quarterly payments due to March 27, 1898, the end of the current year, including both the rent of one half of the farm (due because of the failure to drill a second well) and the rent or royalty due on the first well. The liability for rent of one half of the farm is apparently not disputed. Nothing is said in the printed argument of the appellant denying the liability. There seems to be no reason to doubt that the defendant company is responsible for it, inasmuch as an assignee of an oil or gas lease is liable for payment of all rents or royalties, which accrue while he holds the assignment: Fennell v. Guffey, 155 Pa. 38. Especially is this liability fixed in this case, inasmuch as the power to reconvey and thus terminate the contractual relation was not exercised by the defendant company. The pressure of the appellant's argument bears upon the question of the liability of the defendant company for the three quarterly amounts claimed to be due, under the contract, for the first well. The stipulation is, "If gas only is found, second party agrees to pay $300 each year, quarterly, for the product of each well while the same is being used off the premises."

The appellant asserts that the first well ceased to supply gas in usable quantities; that it was disconnected from the pipe lines; that the product thus ceased "being used off the premises;" that thereupon, the payments for this well ceased before the time of the payment made by the Jackson Farm Gas Company; that the said payment was final and in full settlement as shown by the letter accompanying the payment. The plaintiff replies that the sum to be paid for a gas well was a yearly sum, payable in quarterly instalments; that the contract was for a year; that a new year had begun and the first quarterly payment on account had been made; that the contract provided a method for terminating the liability for rent by reconveyance, which the defendant company did not adopt; that after the alleged disconnection of the well and after the defendant company took an assignment of the contract, they examined the well with intention, if possible, of using it; that there was no such evidence, therefore, of an intention to abandon it as invoked the operation of the clause relating to cessation of use "off the premises;" that the letter and check of the Jackson Farm Gas Company were sent after the assignment to the Conemaugh Gas Company; that any act of the former, after parting with title, could not operate to relieve the Conemaugh Gas Company; that the notice of the cessation of the gas was not an attempt to exercise the power to nullify by reconveyance; and that if such an attempt it was futile because the Jackson Farm Gas Company had already parted with their rights.

Thus stand the parties. Many allegations and counter allegations appear to be made. There is, however, but one fundamental question upon the answer to which the case hangs: Was the payment of $300 under all of the terms of the contract an amount to be paid for a current year, whether the well was used or not during that year? We are of opinion that the stipulation was for a year. When a new year was entered upon an obligation to pay for all of that year arose, subject to the right to annul by reassignment. If the product of the well ceased to be used "off the premises" during that year, it was a risk assumed by the lessee. The year knew no fractions. In respect to the liability to pay there was no apportionment provided in the case of failure of gas. This is the

meaning to be placed upon the clause providing for payment.

It is true that in this case the compensation, rent or royalty is not agreed to be paid in advance (as in Williams v. Guffy, 178 Pa. 342), but the promise to pay is to pay for a year, and before the commencement of each year, the lessee had the right to determine whether or not he desired to enter upon it.

Apart from the meaning deducible directly from the language of the several portions of the contract itself, there is light to be gained from the acts of the parties. There was an examination made of this well by the defendants after the time at which the well is said to have been cut off or abandoned. Their course indicates an intention to retain the rights under the contract to drill other wells and to utilize the first well, if possible. The letter sent by the Jackson Farm Gas Company could not at the most have a greater effect than notice that the well had ceased to produce. Giving this its proper effect and having regard to the disconnection of the well also, it was not such an abandonment as released the defendants in view of their apparent retention of right and their failure to reassign as provided by their contract. The effect of the failure to reassign was felt by the defendants. An attempt was made at or about the time of the bringing of this suit to reassign and to force the plaintiff to accept the reassignment. This he declined. The incident is referred to only because the act indicates that up to that time there had been no attempt to render null the document under which the defendant company is now sought to be held liable.

We are of opinion that no error was committed by the court below and the judgment is, therefore, affirmed.